# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2971 | **DATE** | July 24, 2003 |
| **CASE TITLE** | METHODE ELECTRONICS v ADAM TECH AND VINCE DEVITO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The court issued a rule to show cause on May 8, 2003. After considering the responses and further arguments of the defendants, the court finds that respondents Terrence P. Canade and Methode Electronics, Inc. have failed to show cause why they should not be sanctioned pursuant to Rule 11, F.R.C.P., and those respondents are sanctioned for their Rule 11 violations, as set forth in the memorandum opinion and order entered this date. If the parties are unable to agree upon an amount for defendants' fees and expenses, defendants shall file a fee petition by August 15, 2003 and respondents Canade and Methode may respond by August 29, 2003.
The rule to show cause is discharged as to attorneys Bedell A. Tippins and Shane W. Blackstone. ENTER MEMORANDUM OPINION AND ORDER.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | Arthur J. Howe - 701-9335 Terrence P. Canade 896-6562 Harold Hoffman - 201/569-0266 | | **Document Number** |
| | No notices required. | | number of notices | |
| x | Notices MAILED by judge's staff. | U.S. DISTRICT COURT | JUL 2 5 2003 | 35 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | 03 JUL 24 PM 4: 26 | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | FILED-ED 10 | date mailed notice | |
| KAM | courtroom deputy's initials | | KAM | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**DOCKETED**

**JUL 2 5 2003**

METHODE ELECTRONICS, INC.            )
                                     )
                                     )
             Plaintiff,              )
                                     )
    v.                               )    No. 03 C 2971
                                     )
ADAM TECHNOLOGIES, INC. and          )
VINCENT DEVITO,                      )
                                     )
             Defendants.             )

**MEMORANDUM OPINION AND ORDER**

The parties to this case are engaged in the electronic connector business. The plaintiff, Methode Electronics, Inc. ("Methode"), is a Delaware corporation with its principal place of business in Chicago, Illinois. From 1987 until May of 1993, Methode owned all of the stock of the defendant Adam Technologies, Inc., a New Jersey corporation with its principal place of business in New Jersey. The defendant Vincent DeVito, a New Jersey resident, ran the "Adam Tech" business for Methode. Disputes arose between Methode and DeVito, resulting in various lawsuits in the state of Delaware and a federal suit that was set to go to trial before Judge Anne E. Thompson in the United States District Court for the District of New Jersey in May of this year. On the eve of trial, the parties reached a settlement. The agreement provided that Methode would sell to Vincent DeVito all of its shares in Adam

35

Technologies, Inc. ("Adam Tech"), as well as the Adam Tech trade name and trademarks, and a large amount of electronic connector inventory. The parties also executed a separate license agreement which gave Methode an exclusive 90-day license, expiring July 31, 2003, allowing it to market the remaining Adam Tech products it had on hand. The license agreement gave Methode exclusive use of the trade name and of the trademarks during the license period and provided that Adam Technologies, Inc. and Vincent DeVito would do nothing during that 90-day period to interfere with Methode's exclusive license.

On May 2, 2003, Methode filed suit in this court charging Adam Technologies, Inc. and Vincent DeVito with breach of the exclusive license agreement. The gravamen of the complaint was set forth in paragraphs 17 and 18:

17. Less than one day after executing the License Agreement, Adam Tech and Mr. DeVito began undermining Methode's rights and began confusing the marketplace.

18. On May 1, 2003, Adam Tech and/or Mr. DeVito issued primarily by fax transmission to Methode customers a "press release" which announced that "Adam Tech will be accepting orders and opportunities for more than 5,000,000 connectors stocked at its Union, NJ facility." A true and correct copy of the May 1, 2003 press release (the "Press Release") is attached to this Verified Complaint as Exhibit C.

Count I of the complaint alleged that this conduct violated the Lanham Act, 15 U.S.C. § 1125(a), in that it caused confusion in the marketplace as to who had the right to market Adam Tech

products during the license period. Count II alleged breach of the license agreement, Count III alleged interference with contract and Count IV alleged violation of the Illinois Deceptive Trade Practices Act.

Attached to Methode's complaint were three exhibits. Exhibit A was a copy of the trademark issued by the United States Patent and Trademark Office for the words "Adam Tech" in connection with "electrical connectors consisting of printed circuit board connectors, cable connectors and cable assemblies." Exhibit B was a copy of the license agreement between Adam Technologies, Inc. as licensor and Methode Electronics, Inc. as licensee, giving Methode an exclusive license to use the trade name "Adam Technologies, Inc." and all accompanying service marks and trademarks until July 31, 2003. Exhibit C was a copy of the press release issued by the defendant Adam Tech, which included the statement "[e]ffective May 1, 2003, Adam Tech will be accepting orders and opportunities for more than 5,000,000 connectors stocked at its Union, NJ facility."

Paragraphs 19 and 20 of the Methode complaint alleged that:

19. Adam Tech and/or Mr. DeVito issued the Press Release to Methode distributors and customers throughout North America, including distributors and customers in this District (emphasis added).

20. For instance, Methode has learned that its customers, All American Semiconductor and Heiland/Force Electronics, each of which maintain branches in this District, received a fax copy of the Press Release.

Paragraph 6 of the complaint alleged that:

> 6.  Venue is proper in this District, pursuant to 28 U.S.C. §
>     1391(b), <u>because a substantial part of the events giving rise
>     to this claim occurred in this District</u> (emphasis added).

The complaint was signed by attorney Terrence P. Canade and
verified by James F. McQuillen, Executive Vice President of
Methode.  The verification states:

> James F. McQuillen, as Executive Vice President of
> plaintiff Methode Electronics, Inc., verify under penalty
> of perjury, that the averments in the foregoing Complaint
> are true and correct.

### Methode's Motion for a Temporary Restraining Order

On May 5, 2003, three days after the complaint was filed,
Methode filed a motion for a temporary restraining order, basically
repeating the allegations of the complaint and attaching the same
three exhibits.  The relief sought was that the defendants Adam
Technologies, Inc. and Vincent DeVito be restrained from using the
designation "Adam Technologies," "Adam Tech," or any "confusingly
similar designation" in connection with the marketing of any
products or services in the connector and cable products industry.

### Defendants' Response to Methode's
### Motion for a Temporary Restraining Order

Methode's motion for a temporary restraining order came on for
hearing on May 7.  By that time, defendants Adam Technologies and
DeVito had filed a response to the motion, challenging plaintiff's

allegation that venue was proper in this district.  The response
stated that:

> [N]ot a single copy of the press release upon which
> Methode predicates so much of its claim was transmitted
> to a single company in this District, or in the State of
> Illinois.  The press release was sent only to companies
> in New York, Massachusettes [sic], California, Florida
> and Texas.

(Response at 6-7 (emphasis omitted).)  In addition to challenging
venue, defendants pointed out that there was a written settlement
agreement separate from the license agreement.  The written
settlement agreement described the exclusive license, and went on
to provide that:

> Notwithstanding the foregoing, nothing shall prevent Mr.
> DeVito or his designee, during the period of the License
> Agreement, from selling inventory that Methode delivers
> pursuant to this Settlement Agreement.

(Settlement Agreement at 5, ¶ e.)  Defendants' response argued that
Methode's omission of any reference to the fact that a written
settlement agreement existed, and that it contained the provision
just quoted, was a "deliberate concealment from this Court of the
fact that Methode explicitly agreed, in a signed writing, that
defendants could sell scheduled inventory during the period of the
90-day license granted to plaintiff."  (Response at 1.)

During the hearing of May 7, Methode was represented by Mr.
Canade and defendants were represented by attorney Harold M.
Hoffman, of Englewood, New Jersey.  In regard to the above-quoted
provision of the settlement agreement, Mr. Canade conceded that

defendants had the right to sell the Adam Tech products during the license period, but argued that they did not have the right to use the name "Adam Tech" during that period. We expressed some skepticism as to whether that was a practicable distinction and stated that we thought parol evidence might be necessary to explain what the settling parties intended when they included the "notwithstanding the foregoing" provision in the settlement agreement. (Tr. of Proceedings of May 7, 2003, at 9-11.) We did not come to any conclusion about this, but it was clear that in failing to mention this provision of the settlement agreement — or even that there was a written settlement agreement — in either the complaint or the motion for a temporary restraining order, plaintiff had omitted relevant information that the court should have been given. If the defendants had not filed a response to the motion — as often happens in temporary restraining order practice, especially when the defendants are located outside the district — we would not have known that defendants had the right to sell Adam Tech inventory during the license period.

We focused more specifically at the hearing on defendants' contention that the venue allegations of the complaint were false, because, if this court lacked venue, we would in no event grant a temporary restraining order. It would instead be appropriate to grant defendants' request that the case be transferred to the District of New Jersey, where venue was clearly proper and where

the court was already familiar with the parties and the background

of their disputes.

During the colloquy about venue, the following occurred:

THE COURT: Let me ask Mr. Canade what the basis was for Mr. McQuillan [sic], who verified this verified complaint, to allege in paragraph 19 that Adam Tech and/or Mr. DeVito issued the press release to Methode distributors and customers throughout North America, including distributors and customers in this district?

MR. CANADE: It's the following paragraph, your Honor, which indicates the two customers who have branches in this district that we heard from who had received this information.

MR. HOFFMAN: And they have branches - and if the fax were sent to California, your Honor, that's exactly the point.

THE COURT: Paragraph 20 doesn't bear out paragraph 19. It talks about people receiving a fax copy at a branch in this district. That indicates that some other office sent them a fax of something it had received.

MR. CANADE: When we talk about Lanham Act, we believe in good faith that we've alleged that folks in this district received this. The Court is certainly free to determine that it's not a substantial part, but it was a good-faith allegation based on a lack of information that we had from opposing counsel about where all these things went. We knew these two in Illinois.

(Id. at 17-18.)  In short, Mr. Canade's argument was that paragraph

19 of the complaint, stating that "Adam Tech and/or Mr. DeVito

issued the press release to Methode distributors and customers

throughout North America, including distributors and customers in

this District" was a truthful allegation, because distributors and

customers in this district may have received faxed copies of the

release, not from the defendants, but from those distributors' and customers' branch offices in other districts.

At the conclusion of the hearing we indicated that we would transfer the case to the District of New Jersey as the more convenient forum and that defendants' motion for a temporary restraining order would go with the case. (Id. at 18.) Mr. Hoffman moved for defendants' costs incurred as a result of his coming from New Jersey to Chicago for the aborted hearing, and we set a briefing schedule on the motion. (Id. at 19.)

The following day, May 8, we entered an order describing the proceedings of the previous day and stating that:

> Upon further reflection, we have decided to delay transfer until we have attended to this matter of expenses and perhaps sanctions as well. Defense counsel did not mention the basis for the requested award of expenses, nor did we consider at the time we set the briefing schedule what the basis would be. We can think of no basis other than Rule 11 of the Federal Rules of Civil Procedure, which would authorize sanctions, including reimbursement of the opponents' expenses incurred as a result of a Rule 11 violation.

(Order of May 8, 2003, at 2-3.) We went on to issue a rule upon Mr. Canade and two of his co-counsel whose typewritten names were listed on the complaint as counsel for plaintiff, Bedell A. Tippins and Shane W. Blackstone, as well as the plaintiff Methode Electronics, Inc., to show cause why they should not be held to have violated Rule 11(b)(3) in regard to paragraph 19 of the complaint, inasmuch as the statement that the defendants sent the

press release into this district "appears to have been without evidentiary support...." (<u>Id.</u> at 3.) We also directed Messrs. Canade, Tippins and Blackstone to show cause why they had not violated Rule 11(b)(2) by the allegation in paragraph 6 of the complaint that, "Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this claim occurred in this District." (<u>Id.</u>)

### Proceedings Following Issuance of the Rule to Show Cause

On May 9, 2003, Methode filed a notice of voluntary dismissal without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, subject to this court's retention of jurisdiction over the rule to show cause. Recognizing that we had delayed transferring the case until we had disposed of the rule to show cause, Methode elected to dismiss the case here and file a new one in New Jersey.[1] The motion stated that Methode desired to proceed with the case in New Jersey and seek a restraining order there.

Methode obtained substitute counsel to defend it against the rule to show cause, and attorneys Canade, Tippins and Blackstone obtained separate counsel to represent them in responding to the rule.

---

[1] Rule 41(a) permits a plaintiff to take a voluntary dismissal without prejudice "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs ...."

Mr. Hoffman moved for leave to take the deposition of James F. McQuillen, Methode's executive vice president who had verified the complaint. We granted leave over the objection of Methode.

### Responses to the Rule to Show Cause

Mr. Hoffman, representing the defendants Adam Tech and Vincent DeVito, has reacted with enthusiasm to the idea that his oral motion for costs made at the May 7 hearing can only be addressed through a sanctions motion pursuant to Rule 11. He lists fees and expenses in the amount of $39,006.38 and suggests that, as a Rule 11 sanction, that amount be trebled to $117,019.14. In addition, he argues that an appropriate sanction against Methode would be to dismiss this case with prejudice.

Methode argues that the case has already been dismissed by virtue of its Rule 41(a) notice, so that nothing remains to be dismissed with prejudice. In addition, Methode argues that a dismissal with prejudice would be an excessive sanction. We agree with Methode. It appears to us that the case did leave our docket on May 9, when the Rule 41(a) notice was filed. The notice was not a stratagem to avoid the rule to show cause, since Methode conceded that we retained jurisdiction to follow through on the rule.

But even if the case remained here, a dismissal with prejudice would not be justified. That would be an extreme sanction, and the case defendants cite in support of their request is distinguishable on the facts. In <u>Jimenez v. Madison Area Technical College</u>, 321

F.3d 652 (7th Cir. 2003), the Rule 11 sanctions imposed by the district court included a dismissal of plaintiff's case with prejudice. It appeared without question that the entire case was spurious, being based on falsified documents. The Court of Appeals affirmed, noting that:

> Jimenez's claim was so unmeritorious and her behavior so deceptive that the filing of her baseless claim amounted to a veritable attack on our system of justice.

Id. at 657. Here, we have made no finding as to the merits of Methode's claims. Whether they are sufficient to warrant prosecution in a proper venue is something Judge Thompson will decide. What we can say is that the case is nothing like Jimenez. Dismissal with prejudice would be too severe a sanction for the misconduct alleged.

Turning to the responses of the attorneys, they have all filed affidavits to the effect that Mr. Canade was in charge of the case and decided what allegations to include in the complaint. Messrs. Tippins and Blackstone did not participate in that decision, and their involvement was limited to performing discrete tasks at Mr. Canade's instructions. We accept these affidavits at face value and will discharge the rule as to Messrs. Tippins and Blackstone.

This leaves Methode and Mr. Canade ("Respondents").

Methode's exposure for Rule 11 sanctions is limited to the factual allegations in paragraphs 19 and 20 of the complaint. Because it signed the complaint, by its executive vice president,

Methode was required to make a reasonable inquiry into the facts in order to determine that the allegations of the complaint had merit. See Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 550 (1991).[2]

Methode's responsibility for its factual allegations was particularly important in this case, where the complaint was verified and was to be used to seek a temporary restraining order and perhaps a preliminary injunction. It is unusual for complaints to be verified. Methode and Mr. Canade have not offered any explanation as to why this one was verified, but a fair inference is that it was verified in order to persuade the court that there was a sound basis for granting injunctive relief, especially if defendants failed to appear in opposition. On its face, especially when verified, the complaint alleges everything that is needed: subject matter jurisdiction, personal jurisdiction, venue, actionable conduct by the defendants, and a likelihood of irreparable harm to Methode if relief were denied. The complaint said nothing about the written agreement that modified the exclusive license, and we would never had known about it had not the defendants filed a response to the TRO motion and appeared for the hearing. Neither does the complaint give any indication that

---

2/ The situation is otherwise in regard to legal matters alleged in the complaint, as recognized by Rule 11(c)(2)(A). Accordingly, the rule to show cause did not require Methode to explain why it had alleged in paragraph 6 of the complaint that "[v]enue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this claim occurred in this District."

there is any doubt that defendants sent the press release to distributors located in this district, thus making this court a proper venue for the action. It took the defendants to inform us that in fact they had not sent the press release into this district and that the allegations of paragraph 19 that defendants "issued the Press Release to Methode's distributors and customers throughout North America, including distributors and customers in this District," is simply false.

Responding to the rule to show cause, Methode attempts to justify the allegation in paragraph 19 by referring to paragraph 20, which, as already noted, alleged that:

> For instance, Methode has learned that its customers, All American Semiconductor and Heiland/Force Electronics, each of which maintain branches in this District, received a fax copy of the Press Release.

Our analysis of paragraphs 19 and 20 is they were artfully phrased to provide the pleader an opportunity to defend paragraph 19 by saying exactly what Respondents now say - that paragraph 19 means that branch offices in this district had received faxes from offices outside the district. The introductory words "[f]or instance" in paragraph 20 are designed to supply an apparent link to paragraph 19. But the effort to connect the two paragraphs fails, because they make fundamentally different allegations. Paragraph 19 alleges that "Adam Tech and/or Mr. DeVito issued the Press Release ...." Paragraph 20 says nothing about Adam Tech or Mr. DeVito issuing anything. Paragraph 19 alleges that Adam Tech

and/or Mr. DeVito "issued the Press Release to Methode distributors ... <u>including distributors and customers in this district</u>." Paragraph 20 says nothing about anything Adam Tech or Mr. DeVito did, or about anyone receiving a press release from Adam Tech or Mr. DeVito, but merely states that two distributors "received a faxed copy of the Press Release." Actually, paragraph 20 does not even allege that the Illinois branch offices received the faxes. It says that the two customers, "each of which maintain branches in this District," received a fax copy. The faxed copy could have been received by the customers at their offices located outside this district, and the offices that are located in this district, for all that is alleged in paragraph 20, may never have received fax copies.

Mr. McQuillen's deposition makes it clear that when he signed and verified the complaint he did not know whether anyone in this district had been sent a copy of the press release:

> Q.  Now, sir, on May 2nd before you signed the Verified Complaint at around 3:00 p.m., or somewhere between 3:00 and 4:00 p.m., did you know if the press release had been sent to branch offices in Illinois?
>
> A.  No.

(Tr. of Deposition of James F. McQuillen, May 28, 2003, at 40. ) Moreover, Mr. McQuillen and Mr. Canade conferred about the matter until virtually the moment the complaint was filed, and Mr. McQuillen told Mr. Canade that he did not know whether the press release had been sent to Illinois. (<u>Id.</u> at 97-99.)

Methode lists a number of "facts known to Mr. McQuillen on May 2, upon which he formed his belief that paragraph 19 was true ...." Twelve items are listed, and we will quote merely the first two, which are typical of the rest:

1.  Methode's sales staff had informed Mr. McQuillen that defendants had sent the press release to at least six customers in at least four states. Dec. at ¶ 5; Tr. at 37-38, 69, 72, 97, 147.

2.  At least two of the customers to which defendants had sent the press release — Heiland/Force and All American Semiconductor — had branch offices in Illinois. Dec. at ¶ 5; Tr. at 39-40, 69, 97, 147.

(Plaintiff's Reply to Rule to Show Cause at 2.) In fact, items 1 and 2 are probably a little stronger than the other ten. But taken together, all twelve do nothing but invite speculation as to whether a customer in Illinois might somehow have received a copy of a press release issued by the defendants. They do not suggest any likelihood at all that the defendants sent anything to Illinois.

In the briefs filed by Methode and Mr. Canade, there is a further argument that the allegation in paragraph 19 is related to the allegation in paragraph 6 that a substantial part of the transaction occurred in this district. The argument is confusing, but one part of it is that if a likelihood of confusion occurred in this district, then, for Lanham Act purposes, that would constitute a substantial part of the transaction and establish venue here. But what remains to be explained is how the defendants are

connected to confusion arising in this district. Methode and Mr. Canade seem to be suggesting that, even if customers in this district received nothing but faxes sent by someone other than the defendants, any resulting confusion in this district would suffice for venue and the allegation in paragraph 6 was truthful.

This contention is developed further in Mr. Canade's brief, where his counsel make the following argument:

> Mr. Canade's additional basis for asserting venue under the Lanham Act was that receipt of the press release by branch offices in this District from their main offices out-of-state in the ordinary course would create a likelihood of confusion in this District by suggesting to customers in this District that Methode was exiting the connector market and that Adam Tech was taking over Methode's product line. Courts have found venue proper in Lanham Act cases under § 1391(b)(2) in districts where confusion about the origin of the product is likely to occur. See, e.g., Sidco Industries, Inc. v. Wimar Tahoe Corp., 768 F. Supp. 1343 (D. Oregon 1991) (venue in trademark infringement case proper because confusion was likely to occur in Oregon); French Transit, Ltd. v. Modern Coupon Sys., Inc., 858 F. Supp. 22 (S.D.N.Y. 1994) (in trademark infringement claims, the actionable wrong takes place both where infringing labels are affixed to goods and where confusion of purchasers is likely to occur); IA, Inc. v. Thermacell Technologies, Inc., 983 F. Supp. 697 (E.D. Michigan 1997)(for claims of "passing off" under the Lanham Act, courts have found venue proper under § 1391(b)(2) in districts where confusion about the origin of the product is likely to occur).

> These decisions are not being offered to reargue venue, but rather to support the contention that Mr. Canade's inferences and his application of the law to those inferences were not frivolous. Although Mr. Canade was unable to obtain evidence of a direct transmission of the press release by defendants into this District, he acted reasonably under the circumstances in signing the Verified Complaint on May 2 and presenting his arguments for venue to the Court at the hearing on the TRO motion

on May 7, given the customers with facilities in Illinois
who had received the press release.

(Response of Terrence P. Canade, Bedell A. Tippins, and Shane W.
Blackstone to Rule to Show Cause Why They Have Not Violated Fed. R.
Civ. P. Rules 11(b)(3) and 11(b)(2) at 12-13.)

We have quoted the entire argument so that it will be clear
what Mr. Canade's counsel are saying: they cite three district
court cases for the general proposition that a likelihood of
confusion can be sufficient for venue. Reading this passage in the
brief, one would think these cases provide a reasonable basis at
least for the allegations of paragraph 6, if not also paragraph 19
of the complaint. The passage contains no hint that one of the
cases does not support this position and the other two stand for
the exact opposite position.

Sidco Industries Inc. v. Wimar Tahoe Corp., 768 F. Supp. 1343
(D. Or. 1991), does hold that a likelihood of confusion in a
district can, in the right circumstances, establish venue. The
defendants in that case operated a casino in Nevada, using a name
similar to that of plaintiff's motel business located in Oregon.
The court held that venue was proper in the district of Oregon, for
two reasons. First, "Wimar [the defendant] advertised the Lake
Tahoe Horizon Casino/Resort through direct mail brochures." Id. at
1345. Secondly, "[b]rochures have been sent to 378 out of the
approximately 405 travel agents in the State of Oregon." Id. The
court concluded that "Sidco has alleged facts indicating that a

substantial part of the acts or omissions giving rise to the claim occurred in the District of Oregon. Defendants' motion to dismiss this action for improper venue is denied." Id. at 1347.

Sidco, then, does support the proposition that the creation of a likelihood of confusion in a district can be a basis for venue. But the factual basis for the court's holding that venue was established was that the defendants had personally mailed into the district advertisements that were likely to cause confusion. The holding of the case, therefore, provides no support for the position of Methode and Mr. Canade, since they had no basis for alleging that the defendants sent the press release to Illinois.

French Transit, Ltd. v. Modern Coupon Systems, Inc., 858 F. Supp. 22 (S.D.N.Y. 1994), was a trademark infringement case involving an alleged likelihood of confusion between competing deodorant products. The court granted the defendant's motion to dismiss for lack of venue. Plaintiff argued that venue was proper because a substantial part of the events giving rise to the claim had occurred in the Southern District of New York. The court rejected the argument, stating that:

> Plaintiff, here, has submitted no evidence to the effect that Defendant advertised Nature's Crystal in New York, that Defendant's distributors advertised Nature's Crystal in New York, or that Defendant conducted a mailing of any publication describing Nature's Crystal to Plaintiff's customers. He neither advertised his product nor made active efforts to sell the product in this District.

Id. at 26.  The court went on to compare the showing necessary for

venue for to the showing necessary for personal jurisdiction:

> In addition, although the product is available in this
> District, Plaintiff has not provided support for the
> allegation that Defendant sold the product directly in
> this District or that Defendant should be held
> responsible for the distributors' actions with respect to
> his product. See Asahi Metal Industry Co. v. Superior
> Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)
> ("the placement of a product into the stream of commerce,
> without more, is not an act of the defendant purposefully
> directed toward the forum state").  We conclude that
> Plaintiff has not demonstrated that Defendant directly
> targeted this District, either by advertising or by
> making active efforts to market Nature's Crystal, as
> Guardala and other relevant legal authority require of a
> party in order to satisfy the "substantial part of
> events" test. Accordingly, Plaintiff has not demonstrated
> that a substantial part of the events giving rise to this
> action occurred in this District.

Id. at 27.

IA, Inc. v. Thermacell Technologies, Inc., 983 F. Supp. 697

(E.D. Mich. 1997), is another Lanham Act case where the plaintiff

sought to establish venue under 28 U.S.C. § 1391(b).  Plaintiff

alleged that one of the defendants had made false and misleading

statements in a prospectus and in various advertisements about a

company he was organizing to compete with the plaintiff.  The court

held that venue was proper in the Eastern District of Michigan as

to two of the defendants, but improper as to the third defendant,

Monroe Parker Securities, Inc.  Monroe had prepared the prospectus

for defendants' business.  The following was the court's analysis

in regard to Monroe:

> This court finds that defendants' argument should prevail
> as to Monroe. First, the prospectus was never directed
> specifically to Michigan residents, and the fact that it
> may have been available through other means does not
> support a finding of proper venue in this district. Id.
> Second, this court does not accept plaintiff's argument
> that statements that appeared on Thermacell's web site
> somehow subject Monroe to venue in this district. The
> Internet site is operated by Thermacell, and not Monroe.
> As noted by the United States Supreme Court in Leroy v.
> Great Western United Corp., 443 U.S. 173, 183-84, 99
> S.Ct. 2710, 2716, 61 L.Ed.2d 464 (1979), "the purpose of
> statutorily specified venue is to protect the defendant
> against the risk that a plaintiff will select an unfair
> or inconvenient place of trial." Here, because Monroe has
> not specifically directed any of its activities toward
> Michigan residents, forcing Monroe to defend this action
> in this district would be unfair. Therefore, this court
> finds that venue is not proper in this district as to
> Monroe.

Id. at 702.

Mr. Canade does not argue that he read these cases and relied
upon them in drafting paragraph 6 of the complaint. We assume that
he did not, and there is cause to wonder whether he has read them
even now.

We agree with the view expressed in French Transit that the
contact with the forum required for venue is similar to the
requirement for personal jurisdiction. See Asahi Metal Indus. v.
Superior Court, 480 U.S. 102, 107 (1987); World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 295-98 (1980). Underlying both
personal jurisdiction and venue is a basic principle of fairness.
Defendants should not be required to defend in a forum, especially
a distant one, in which they have done nothing which is actionable.

At the TRO hearing of May 7, 2003, we questioned whether there was personal jurisdiction but did not press the issue. Having considered the arguments of the parties on venue, it is now clear to us that we had no personal jurisdiction over the defendants.

Another argument that Methode makes is that this court "certainly would not have issued a rule to show cause had the Complaint expressly stated – as Mr. McQuillen believed ... – that the allegations of paragraph 19 were 'likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.' Fed. R. Civ. P. 11(b)(3)." (Plaintiff's Reply to Rule to Show Cause at 6 n.5.) This argument is completely beside the point. Obviously we would not have issued a rule had the complaint alleged that plaintiff had no present evidentiary support for paragraph 19 but believed such support could be obtained in further investigation or discovery. But to say that Methode could have filed a truthful pleading and thus avoided Rule 11 sanctions is hardly an excuse for the fact that Methode did not file a truthful pleading but instead alleged — again, under penalty of perjury — that the defendants issued the press release to distributors and customers in Illinois. This was verified by Mr. McQuillen as "true and correct." For Methode to say that it could have taken advantage of a portion of Rule 11 that allows allegations to be made expressly in the hope of obtaining evidentiary support in discovery is frivolous. That is not what Methode did.

There is, of course, an obvious reason why Methode did not do it. Had the complaint expressly acknowledged that there was no present evidentiary basis for venue in this district, but that plaintiff hoped to develop such evidence in discovery, there would have been no chance of a temporary restraining order. Mr. Canade, an experienced litigator, surely knew that. We might have allowed expedited discovery, but this would have required that defendants be present and have an opportunity to be heard. To avoid these problems, the complaint was drafted in a way that appeared to establish Methode's right to immediate relief.

Another argument by Mr. Canade is that he was on the telephone with Mr. Hoffman on May 2, 2003 attempting to identify the persons to whom the press release had been sent. He states that Mr. Hoffman agreed to find out, but, as of 3:30 p.m. Mr. Hoffman had still not provided the information. "Given the urgency of the situation, Mr. Canade finalized the complaint, signed it and filed it at approximately 4:15 p.m." (Response of Terrence P. Canade, et al., to Rule to Show Cause at 5.) There is no indication that Mr. Hoffman did not attempt to obtain the information, or that he was intentionally withholding it. But even if that had been the case, that would not justify Mr. Canade in filing a complaint containing an allegation for which he knew there was no evidentiary support, especially when the allegation was sworn to by his client under penalty of perjury. Whether there was in fact any "urgency of the

situation" would depend on whether Methode has valid claims against the defendants and whether there would have been a basis for a temporary restraining order. We express no opinions about those matters. (We are informed in one of defendants' briefs that Judge Thompson denied Methode's motion for a temporary restraining order in the newly filed case before her.) But whatever "urgency" there might have been from Methode's point of view, it certainly did not justify filing a complaint in this district containing false statements relating to venue. If there really was an emergency situation, Methode could have filed this complaint in the district of New Jersey, clearly a proper venue and one with which Methode and its counsel were already very familiar.

## **Whether Sanctions are Warranted**

We believe the foregoing discussion indicates that Rule 11 sanctions are warranted both as to Methode and as to Mr. Canade. Both of them intentionally violated Rule 11(b)(3) when they alleged in paragraph 19 of the complaint that the defendants Adam Tech and DeVito issued the press release to distributors and customers in this district. Methode and Mr. Canade both knew that the allegation had no evidentiary support. Moreover, this was not a question of mere negligence. It was an effort to deceive the court as to the existence of venue, so that Methode could litigate the case in a forum that was convenient to it, however inconvenient to defendants, and possibly even obtain preliminary injunctive relief.

The false venue allegation was part of a broader deception that included concealment of the fact that the exclusive license agreement was modified by a written settlement agreement.

Sanctions are also appropriate for Mr. Canade in regard to paragraph 6 of the complaint. This paragraph violated Rule 11(b)(2) in that there was no legal basis for the allegation that "a substantial part of the events giving rise to this claim occurred in this District."

Both Methode and Mr. Canade suggest that the imposition of sanctions would deprive them of the "safe harbor" provision in Rule 11(c)(1)(A). That provision has no application here. It provides that a motion for sanctions shall be served, but not filed or presented to the court unless within 21 days after service the challenged claim or allegation "is not withdrawn or appropriately corrected." In this case, the question of sanctions did not arise until the conclusion of the TRO hearing, and defendants had already incurred the expense of appearing in this district to oppose the TRO motion. There was no question of Methode and Mr. Canade withdrawing the allegations of the complaint, and even now they continue to argue that the offending allegations were essentially true.

Another consideration warranting sanctions against both Methode and Mr. Canade is that their misconduct has required this court to divert a substantial amount of time that could have been

better spent.  The case is no longer even pending before us, but we had to attend to the Rule 11 question in order to uphold the integrity of the judicial process.  The result, however, has been unfortunate delay in the disposition of other cases.  The Seventh Circuit has expressed the idea very clearly:

> Rule 11 creates duties to one's adversary and to the legal system, just as tort law creates duties to one's client.  The duty to one's adversary is to avoid needless legal costs and delay.  The duty to the legal system (that is, to litigants in other cases) is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error.  Rule 11 allows judges to husband their scarce energy for the claims of litigants with serious disputes needing resolution.

Mars Steel Corp. v. Continental Bank, N.A., 880 F.2d 928, 932 (7th Cir. 1989).

## What Sanctions Are Appropriate

Rule 11(c)(2) provides that a sanction imposed for violation of the rule "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  Further, the sanction:

> may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

This process began with a motion by Mr. Hoffman at the TRO hearing for an award of the defendants' expenses in sending him to Chicago for the hearing.  We believed the motion was appropriate, but saw

no basis for relief other than Rule 11, so we issued a rule to show cause pursuant to Rule 11. Because the Rule 11 process began with Mr. Hoffman's motion for expenses, we consider that the sanctions will be "imposed on motion" within the meaning of subdivision (c)(2). Consequently, the sanction may include an order directing payment of the defendants' expenses and attorneys fees.

We have indicated, _supra_ at 10, that Mr. Hoffman has listed fees and expenses in the amount of $39,006.38. Methode and Mr. Canade have not specifically addressed the reasonableness of this claim because until now they have taken the position that sanctions are not warranted. At this point, however, it would be appropriate for them to consider the request, because we will award defendants the reasonable fees and expenses they have incurred as a result of the Rule 11 violations, including the fees incurred in the briefing of the rule to show cause. We request that the parties refer to Local Rule 54.3 and attempt to agree upon an amount.[3] (This will be without prejudice to the position of Methode and Mr. Canade that they have not violated Rule 11 and should not be subject to sanctions.) Any time reasonably spent by Mr. Hoffman in the Rule 54.3 process will also be compensable. In the event the parties are unable to agree upon an amount, Mr. Hoffman should file a fee petition in accordance with Rule 54.3. The petition should be

---

[3] For Mr. Hoffman's convenience, we will enclose a copy of the rule along with his copy of this opinion.

filed no later than August 15, 2003. If a petition is filed, Methode and Mr. Canade may respond by August 29, 2003.

Mr. Hoffman has suggested that the defendants' fees and expenses be trebled, but we decline to do that. Defendants should be made whole, but there is no reason they should collect a fine from Methode and Mr. Canade. This does not mean, however, that a cost and fee award will be a sanction sufficient to carry out the deterrent purpose of Rule 11. Considering the intentional nature of the Respondents' Rule 11 violations, and the manner in which they have dealt with the rule to show cause (admitting nothing and defending with arguments that are as baseless as the offending allegations of their complaint), we think it is obvious that something more than a mere shifting of costs is required to deter them from similar misconduct in the future. Accordingly, we intend to impose upon each respondent a substantial fine, payable to the Clerk of the Court, in addition to the fee award. Finally, Mr. Canade's unprofessional conduct deserves a reprimand in addition to the monetary sanctions.

## Conclusion

For reasons explained in the foregoing opinion, it is hereby ordered as follows:

A.   Attorney Terrence P. Canade is reprimanded for his unprofessional conduct in drafting, signing, filing and later advocating a complaint in this case which contained a factual allegation in paragraph 19 that he knew did not have evidentiary support and a venue allegation in paragraph 6, that he knew was not warranted by existing law or else he

recklessly disregarded the fact that it was not warranted by existing law;

B.    Attorney Terrence P. Canade is fined the sum of $10,000, payable to the Clerk of the Court by September 30, 2003. The fine is imposed because the violations described in paragraph A. were committed intentionally, for the purpose of deceiving the court;

C.    Attorney Terrence P. Canade shall be responsible for fifty percent of the defendants' fees and expenses to be determined by the court pursuant to Local Rule 54.3;

D.    Methode Electronics, Inc., is fined the sum of $10,000, payable to the Clerk of the Court by September 30, 2003. The fine is imposed because Methode, through its executive vice president, engaged in the same intentionally deceptive conduct as did Mr. Canade in regard to paragraph 19 of the complaint;

E.    Methode Electronics, Inc. shall be responsible for fifty percent of the defendants' fees and expenses to be determined by the court pursuant to Local Rule 54.3.[4]

F.    The rule to show cause is discharged as to attorneys Bedell A. Tippins and Shane W. Blackstone.


Date:    July 24, 2003

ENTER:   _____
         John F. Grady, United States District Judge


_____

[4] While this court cannot speak for the Court of Appeals, it is our view that this order will not be final and appealable until a further order is entered assessing the amount of defendants' fees and expenses for which Respondents are responsible.